United States District Court
Southern District of Texas
**ENTERED**
March 29, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JULIE DAVIDS,                          §
                                       §
             Plaintiff,                §
                                       §
v.                                     §        CIVIL ACTION NO. H-21-3152
                                       §
REGIONS FINANCIAL CORP.,               §
                                       §
             Defendant.                §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Julie Davids, filed this action on September 28, 2021, against defendant, Regions Financial Corporation ("Regions" or "Defendant"), for employment discrimination based on gender and pregnancy in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), the Pregnancy Discrimination Act of 1978, as amended, 42 U.S.C. § 2000(e)(k), and the Texas Commission on Human Rights Act ("TCHRA"), Chapter 21 of the Texas Labor Code, and for retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA).[1]  Pending before the court is Defendant Regions Bank's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 25).  For the reasons set forth below Defendant's MSJ will be granted, and this action will be dismissed with prejudice.

---

[1] Plaintiff's Original Complaint, Docket Entry No. 1, p. 2 ¶¶ 6-7 and 6-9 ¶¶ 22-41.

## I. **Undisputed Facts**

In June of 2018 Regions' Consumer Banking Manager ("CBM"), Mary McDonnell ("McDonnell"), hired Plaintiff as Branch Manager of the Regions branch in Conroe, Texas.[2]  Plaintiff's duties as Branch Manager included servicing business accounts, removing holds on accounts, and refunding fees for customers based on bank errors.[3] McDonnell was Plaintiff's supervisor until November of 2019 when Michael Cofas ("Cofas") succeeded McDonnell as CBM.[4]

Regions employees are required to follow its Code of Business Conduct and Ethics,[5] which outline prohibited conduct including self-dealing.  In pertinent part the Code of Business Conduct and Ethics states that "[t]o avoid actual or perceived conflicts of interest, associates, officers, and Directors should avoid engaging in activities that are or give the appearance of a conflict of

---

[2]Plaintiff's Original Complaint, Docket Entry No. 1, p. 3 ¶ 9. See also Plaintiff Julie Davids' Response in Opposition to Defendant Regions Financial Corporation's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 28, p. 9 (citing Oral and Video Deposition of Julie Davids December 9, 2022 ("Davids' 2022 Deposition"), p. 61:3-24, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 17.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[3]Plaintiff's Response, Docket Entry No. 28, pp. 10-11 ((citing Davids' 2022 Deposition, pp. 99:21-103:3, 217:24-220:22, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 26-27 and 56).

[4]Id. at 9 and 14 (citing Davids' 2022 Deposition, pp. 61:23-63:12, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 17).

[5]Declaration of Nicole Cooper ("Cooper Declaration"), pp. 1-2 ¶ 3, Exhibit E to Defendant's MSJ, Docket Entry No. 25-5, pp. 2-3.

interest."[6]   Plaintiff acknowledges that she was a Regions associate.[7]

> Examples of activities that Regions considers to be prohibited self-dealing [include] . . . Processing bank transactions for your own personal accounts, the accounts of members of your immediate family or accounts in which you have a personal interest or on which you are an authorized signer.  Specifically, this includes, but is not limited to, opening accounts, accepting deposits, withdrawal of deposits, refunding, reversing or waiving fees, approving or increasing credit lines or loans and cashing checks.[8]

Plaintiff completed annual training on Regions' Code of Business Conduct and Ethics in June of 2018 and June of 2019.[9]  Violations of the Code of Business Conduct and Ethics were subject to disciplinary action pursuant to Regions' Progressive Discipline policy,[10] which stated that

> [a]t Regions' discretion progressive disciplinary action may be applied, which is designed to give Associates the opportunity to correct conduct.  However, some conduct may require skipping steps in the progressive discipline framework, or may result in termination of employment following the first offense. . . The decision as to the

---

[6]See Regions' Code of Business Conduct and Ethics 2018, Exhibit C to Plaintiff's Response, Docket Entry No. 28-3, p. 19.

[7]Davids' 2022 Deposition, Exhibit A to Plaintiff's Response, p. 229:16-20, Docket Entry No. 28-1, p. 59.

[8]Regions' Code of Business Conduct and Ethics 2018, Exhibit C to Plaintiff's Response, Docket Entry No. 28-3, pp. 19-20.  See also Exhibit E-1 to Cooper Declaration, Exhibit E to Defendant's MSJ, Docket Entry No. 25-5, pp. 23-24 (same).

[9]See Certificates of Completion attached to Declaration of Michael Cofas ("Cofas Declaration"), Exhibit D to Defendant's MSJ, Docket Entry No. 25-4, pp. 7-8.

[10]Cooper Declaration, pp. 1-2 ¶ 3, Exhibit E to Defendant's MSJ, Docket Entry No. 25-5, pp. 2-3.

appropriate disciplinary action is at the sole discretion of Regions.[11]

When Plaintiff learned of a job opening at Regions' North Freeway branch, which was managed by Oscar Silva ("Silva"), she told her husband, Bernardo Ramon Davids-Guerrero ("Davids-Guerrero"), and on August 18, 2018, Silva hired Plaintiff's husband as a Financial Relationship Consultant ("FRC").[12]

In March of 2019, Davids-Guerrero transferred to Regions' Springwoods branch in Spring, Texas, and Silva remained his supervisor.[13]

In June of 2019, Davids-Guerrero opened a Regions business account for Autodynamica Motors, LLC ("Autodynamica"), a business owned by Frederico Valdes ("Valdes").[14] Davids-Guerrero knew Valdez from Mexico City where they attended the same high school, and sometime in 2019 Plaintiff and her husband went to dinner with Valdes and his girlfriend.[15]

---

[11]Progressive Discipline, Exhibit E-3 to Cooper Declaration, Exhibit E to Defendant's MSJ, Docket Entry No. 25-5, p. 59.

[12]Davids' 2022 Deposition, p. 114:20-116:6, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 30; and Oral and Video Deposition of Bernardo Ramon Davids Guerrero ("Davids-Guerrero Deposition"), pp. 26:23-35:23 and 45:6-9, Exhibit I to Plaintiff's Response, Docket Entry No. 28-9, pp. 27-36 and 46).

[13]Davids' 2022 Deposition, pp. 115:22-116:6, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 30.

[14]Plaintiff's Response, Docket Entry No. 28, p. 11 (citing Davids' 2022 Deposition, pp. 116:24-117:9, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 30-31).

[15]Id. at 12 (citing Davids' 2022 Deposition, pp. 117:10-119:2, (continued...)

-4-

Sometime in September of 2019 Davids-Guerrero used the fax machine at the Regions Springwoods branch to send documents to the Secretary of State adding himself as a manager of Autodynamica.[16]

On September 9, 2019, Plaintiff ordered checks for Autodynamica from her branch, which were rejected due to an incorrect address.[17]  On October 8, 2019, Plaintiff reordered the checks and refunded the fee for the rejected checks upon determining the faulty address was a bank error.[18]

On October 17, 2019, Silva filed a complaint with the bank against Davids-Guerrero for possible self-dealing related to the Autodynamica account.[19]  In pertinent part the complaint stated that Silva

> received an email from BSA/AML regarding a wire that [Davids-Guerrero] submitted.  He did a little research and noticed a refund ($213.83) on the account that was approved by a manager named Julie Davids which is [Davids-Guerrero]'s wife.  He checked the phone records

---

[15](...continued)
Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 31).

[16]Id. at 11-12 (citing Davids' 2022 Deposition, pp. 139:25-141:6, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 36-37).  See also id. at 144:19-22 and 152:10-24, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 37 and 39; and Davids-Guerrero Deposition, pp. 77:6-22, Exhibit I to Plaintiff's Response, Docket Entry No. 28-9, p. 78).

[17]Id. at 12 (citing Davids' 2022 Deposition, p. 131:4-25, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 34).

[18]Id. at 13 (citing Davids' 2022 Deposition, p. 131:8-24, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 34). See also Regions' Fee Refund Policy, Exhibit D to Plaintiff's Response, Docket Entry No. 28-4, p. 3).

[19]Id. at 11 (citing Regions' Investigation Summary, Exhibit E to Plaintiff's Response, Docket Entry No. 28-5, p. 6).

and an outbound call was made to his wife's location. [Davids-Guerrero] is listed as a manager for this business. He and his wife both [have] been servicing this business account.[20]

The investigation of Silva's complaint was assigned to Ms. Nicole A. Cooper ("Cooper").[21] On November 8, 2019, Cooper spoke with Cofas, who told her that he thought both Plaintiff and her husband should be discharged for self-dealing.[22] On November 22, 2019, Cooper, in consultation with her supervisor, Stephen Smith ("Smith"), recommended that Plaintiff be discharged for self-dealing.[23] On December 2, 2019, Plaintiff was summoned to a meeting with Cofas, who initiated a conference call with Cooper, during which Plaintiff was notified that she was being discharged for self-dealing in violation of Regions code of conduct.[24]

---

[20]Regions' Investigation Summary, Exhibit E to Plaintiff's Response, Docket Entry No. 28-5, p. 6.

[21]Id. See also Plaintiff's Response, Docket Entry No. 28, p. 13 ("After Oscar Silva filed the complaint in October 2019; Ms. Cooper, the Associate Relations Business Partner, led the investigation into Mr. Silva's claims.").

[22]Plaintiff's Response, Docket Entry No. 28, pp. 14-15 (citing Nicole Cooper's Handwritten Notes ("Cooper Notes"), Exhibit F to Plaintiff's Response, Docket Entry No. 28-6, p. 2).

[23]Nicole Cooper and Stephen Smith emails (11/21-11/22/19), Exhibit G to Plaintiff's Response, Docket Entry No. 28-7, p. 3 (November 22, 2019, email from Cooper to Smith at 2:34 PM, stating "I submitted the request to you[] for termination for Julie Davids."; and p. 2 (November 22, 2019, email from Cooper to Smith at 2:53 PM stating, "She admitted that he called her about refunding the fees and she serviced the account on other occasions. Regardless, she did transactions on the account. It's still self-dealing. The CBM is in favor of termination, let's move forward with the approval process.").

[24]Plaintiff's Response, Docket Entry No. 28, p. 19 (citing
(continued...)

## II.  **Defendant's Motion for Summary Judgment**

Defendant argues that it is entitled to summary judgment because Plaintiff is unable to present evidence in support of one or more of the essential elements of her claims.  Because "Plaintiff concedes to the dismissal of her Pregnancy Discrimination Act and Family Medical Leave Act claims,"[25] Plaintiff's Title VII and TCHRA claims for sex discrimination are the only live claims in this action.  Defendant argues that it is entitled to summary judgment because Plaintiff is unable to cite either direct or circumstantial evidence in support of her sex discrimination claims.[26]  Plaintiff argues that Defendant's MSJ should be denied because she has satisfied

> her burden of [establishing] a _prima facie_ case of sex discrimination under Title VII and the Texas Labor Code by direct evidence, or at minimum circumstantial evidence.  Plaintiff has direct and circumstantial evidence of material fact disputes as to Defendant's motivating factor and pretextual termination.[27]

---

[24](...continued)
Davids' 2022 Deposition, pp. 160:20-162:23, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 41-42).

[25]Plaintiff's Response, Docket Entry No. 28, p. 8.

[26]Defendant's MSJ, Docket Entry No. 25, pp. 19-26.  _See also_ Defendant's Reply in Support of Its Opposed Motion for Summary Judgment, Docket Entry No. 31, pp. 8-20.

[27]Plaintiff's Response, Docket Entry No. 28, p. 7.

## A.    Applicable Law

### 1.    Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Supreme Court has interpreted the plain language of Rule 56 to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). "The party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex, 106 S. Ct. at 2552). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).

-8-

Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little,</u> 37 F.3d at 1075. The court will not, <u>"in the absence of any proof, assume that the nonnmoving party could or would prove the necessary facts." Id.</u> (emphasis in original).

### 2.   <u>Title VII and the TCHRA</u>

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The TCHRA similarly prohibits employers from discriminating against an employee on the basis of sex. Tex. Lab. Code § 21.051. The TCHRA was specifically enacted to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments," Tex. Lab. Code § 21.001, and the Texas Supreme Court has recognized that "[t]he [T]CHRA was enacted to address the specific evil of discrimination . . . in the workplace." <u>City of Waco v. Lopez,</u> 259 S.W.3d 147, 153 (Tex. 2008). <u>See also Waffle House, Inc. v. Williams,</u> 313 S.W.3d 796, 804 (Tex. 2010) (recognizing that "[o]ne express purpose of the [TCHRA] is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments.'"). Thus, courts apply the same standards when

analyzing Title VII and TCHRA claims.  See  Pineda v. United Parcel Service, Inc., 360 F.3d 483, 487 (5th Cir. 2004).  See also Wright v. Chevron Phillips Chemical Co., L.P., 734 F. App'x 931, 933 n. 2 (5th Cir. 2018)(per curiam)(noting that Texas courts rely on federal law to interpret the TCHRA).

## B.    Analysis

Employment discrimination plaintiffs may rely on either direct or circumstantial evidence, or both.  See Wallace v. Seton Family of Hospitals, 777 F. App'x 83, 87 (5th Cir. 2019) (per curiam) (citing Wallace v. Methodist Hospital System, 271 F.3d 212, 219 (5th Cir. 2001), cert. denied, 122 S. Ct. 1961 (2002)).  See also United States Postal Service Board of Governors v. Aikens, 103 S. Ct. 1478, 1481 n. 3 (1983) (recognizing that intentional discrimination may be proved by either direct or circumstantial evidence); Exxon Mobil Corp. v. Rincones, 520 S.W.3d 572, 583 (Tex. 2017) (quoting Mission Consolidated Independent School District v. Garcia, 372 S.W.3d 629, 634 (Tex. 2012) ("Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases.").  "[The court] must first decide whether [Plaintiff's] proffered evidence is direct or circumstantial because this distinction determines the standards we apply."  Eaglin v. Texas Children's Hospital, 801 F. App'x 250, 255 (5th Cir. 2020) (per curiam).

     1.   <u>Plaintiff Fails to Cite Direct Evidence of Discrimination</u>

     (a)   Additional Law

"Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption." <u>Portis v. First National Bank of New Albany, Mississippi</u>, 34 F.3d 325, 328-29 (5th Cir. 1994) (quoting <u>Brown v. East Mississippi Electric Power Association</u>, 989 F.2d 858, 861 (5th Cir. 1993)). "In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face." <u>Id.</u> at 329. If direct evidence of discrimination exists, the plaintiff is allowed to bypass the burden-shifting analysis articulated by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973), used in circumstantial evidence cases. <u>Portis</u>, 34 F.3d at 328 (citing <u>Trans World Airlines, Inc. v. Thurston</u>, 105 S. Ct. 613, 621-22 (1985)).

> When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.

<u>Brown</u>, 989 F.2d at 861 (citing <u>Price Waterhouse v. Hopkins</u>, 109 S. Ct. 1775 (1989), and <u>Vaughn v. Edel</u>, 918 F.2d 517 (5th Cir. 1990)). <u>See also</u> <u>Eaglin</u>, 801 F. App'x at 255 (same).

(b)   Application of the Law to the Undisputed Facts

As direct evidence of discrimination, Plaintiff cites Cooper's

deposition testimony.   Plaintiff argues that

> the ultimate decisionmaker and lead investigator,
> Ms. Cooper, testified that Plaintiff was terminated
> solely because she is a woman the wife of Mr. Davids[-
> Guerrero]. Ms. Cooper has testified that Plaintiff would
> not have been terminated if she was a male friend of
> Mr. Davids[-Guerrero]; and Ms. Cooper testified that she
> had no evidence during her investigation that would allow
> her to reasonably believe that Plaintiff had knowledge of
> Mr. Davids[-Guerrero]'s personal interest when she
> serviced the Autodynamica account.   Ms. Cooper's sworn
> testimony that her decision to recommend the termination
> of Plaintiff was based on her protected class proves the
> fact of discrimination without inference or presumption;
> because Ms. Cooper was an ultimate decisionmaker and her
> discriminatory intent was directly related to a sex-based
> animus and proximate in time to Plaintiff's
> termination.[28]

Plaintiff argues that "Ms. Cooper's testimony negates and

contradicts any good-faith belief by the employer and establishes

her decision to terminate Plaintiff was based solely on Plaintiff's

protected class without any inference."[29]   Asserting that

"Ms. Cooper has already judicially admitted that the same adverse

action **would not have been taken** if Plaintiff was male,"[30] Plaintiff

---

[28]Plaintiff's Response, Docket Entry No. 28, p. 23 (citing
multiple excerpts from the Video Deposition of Nicole A Cooper
("Cooper Deposition"), Exhibit B to Plaintiff's Response, Docket
Entry No. 28-2.

[29]Id. at 26.

[30]Id. at 25 (emphasis in original, citing Cooper Deposition,
p. 105:8-17, Exhibit A to Plaintiff's Response, Docket Entry
No. 28-2, p. 106).

argues that "[b]ased on Ms. Cooper's own sworn testimony, Defendant would not be able to show that the same adverse employment action would have been made regardless of the discriminatory animus."[31]

Asserting that "Cooper was not [Plaintiff's] supervisor or the decision-maker in [Plaintiff's] termination,"[32] Defendant argues that Plaintiff "seeks to apply the wrong framework to her sex discrimination claim[s] by distorting investigator . . . Cooper's . . . testimony into alleged direct evidence of discrimination."[33] Defendant argues that Cooper's testimony is not direct evidence of discrimination because Cooper did not testify that her recommendation to discharge Plaintiff was based on Plaintiff' sex,[34] because Cooper's recommendation to discharge Plaintiff was made in consultation with Cooper's supervisor, Smith, and because the final decision to discharge Plaintiff was not made by Cooper or Smith but, instead, by Plaintiff's supervisor, Cofas.[35] Defendant argues that Plaintiff has failed to cite any evidence showing that Smith or Cofas harbored discriminatory animus against Plaintiff based on her sex, or that Cooper had special leverage or influence over

---

[31]Id. at 26.

[32]Defendant's Reply in Support of Its Opposed Motion for Summary Judgment, Docket Entry No. 31, p. 6.

[33]Id.

[34]Id. at 11.

[35]Id. at 7 (citing Cofas Declaration, Exhibit D to Defendant's MSJ, Docket Entry No. 25-4, pp. 3-4 ¶¶ 4 and 7).

Cofas' decision to discharge Plaintiff.[36]   Defendant also argues that because there is no direct evidence of discrimination by Cooper or the decision-maker, Cofas, that the mixed-motive analysis recognized in <u>Price Waterhouse,</u> 109 S. Ct. at 1775, does not apply to the facts of this case.[37]

Cooper's deposition testimony, which Plaintiff cites as direct evidence of sex discrimination, does not constitute direct evidence of discrimination because Cooper did not testify that her recommendation to discharge Plaintiff was based on Plaintiff's sex. To the contrary, Cooper repeatedly testified that her discharge recommendation was based on Plaintiff's spousal relationship to Davids-Guerrero. Although Plaintiff contends Cooper testified that she would not have recommended that Plaintiff be discharged had she been a male,[38] Cooper actually testified that she would not have recommended that Plaintiff be discharged had she been a male friend — as opposed to the spouse — of Davids-Guerrero.   For example, Cooper testified:

> Q.   Well, here — it seems like here in this situation that because Julie Davids was the spouse of [Davids-Guerrer] that you made the judgment call that she had to have a personal affiliation; is that correct?
>
> A.   That is correct.   Yes.

---

[36]<u>Id.</u> at 8-9.

[37]<u>Id.</u>

[38]Plaintiff's Response, Docket Entry No. 28, pp. 24 and 28.

-14-

> Q.  But if Julie Davids was not the spouse or was a
>     male friend of [Davids-Guerrero] and it would not
>     be — it would not be an automatic judgment call
>     that that person would have a personal affiliation,
>     correct?
>
> A.  Correct.[39]

Cooper also testified:

> Q.  And to clarify your testimony earlier, Mr. Hodges
>     was asking you about the judgment that you made in
>     this case that led to a termination recommendation.
>     And isn't it true that your judgment would be based
>     off certain evidence in the investigation,
>     including the spousal relationship, the documents
>     from the investigation and the witness interviews?
>
> A.  Yes.[40]

Moreover, Plaintiff, Cooper, and Cofas all testified that Cooper was assigned to investigate the complaint of misconduct against Plaintiff's husband, Davids-Guerrero, that the investigation lead her to Plaintiff, and that while Cooper and her supervisor, Smith, recommended that both Plaintiff and her husband be discharged for violating Regions' policy against self-dealing, the decision to discharge Plaintiff was not made by Cooper but, instead, by Plaintiff's supervisor, Cofas.[41]   Therefore, although

---

[39]Cooper Deposition, p. 105:8-17, Docket Entry No. 28-2, p. 106.

[40]Id. at 193:23-194:5, Docket Entry No. 28-2, pp. 194-95.

[41]See Davids 2022 Deposition, pp. 14:15-21, 62:21-63:12, 120:17-121:7, 133:18-23, 145:9-147:25, 155:3-10, 161:9-162:17, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 5, 17, 31-32, 38, 40, 42; Cooper Deposition, pp. 98:22-99:13, 125:3-127:16, 145:7-148:11, 193:8-194:5, Exhibit B to Plaintiff's
(continued...)

Plaintiff argues that Cooper based her discharge recommendation on Plaintiff's sex, the undisputed evidence — including Plaintiff's deposition testimony — shows that Cooper's discharge recommendation was not based on Plaintiff's sex but, instead, on her spousal relationship to Davids-Guerrero, who was discharged for self-dealing a week before Plaintiff, and on Cooper's belief that Plaintiff had a personal relationship with Autodynamica's owner, to whom she had refunded a bank fee.[42]  The undisputed evidence also shows that the decision to discharge Plaintiff was made by Cofas, not by Cooper.[43]  Accordingly, the court concludes that the Cooper testimony on which Plaintiff relies is not direct evidence of discrimination. Because Plaintiff does not present direct evidence of discrimination, the evidence in this case must be analyzed under the McDonnell Douglas burden-shifting framework.   See Owens v. Circassia Pharmaceuticals, Inc., 33 F.4th 814, 825 (5th Cir. 2022).

---

[41](...continued)
Response, Docket Entry No. 28-2, pp. 99-100, 126-28, 146-49, 194-95; and Cofas Declaration, pp. 2-3 ¶¶ 4-7, Exhibit D to Defendant's MSJ, Docket Entry No. 25-4, pp. 3-4.

[42]Davids 2022 Deposition, p. 147:21-25 (acknowledging that her husband was discharged for self-dealing a week before her), and 154:5-15 (acknowledging that Cooper could have believed the Plaintiff had a personal relationship with Autodynamica's owner), Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 38 and 40.

[43]Cofas Declaration, pp. 2-3 ¶¶ 4-7, Exhibit D to Defendant's MSJ, Docket Entry No. 25-4, pp. 3-4.

2.   <u>Plaintiff Fails to Cite Circumstantial Evidence Creating a Genuine Issue of Material Fact for Trial</u>

(a)   Additional Law

Because Plaintiff has not cited direct evidence of sex discrimination, her Title VII and TCHRA claims must by analyzed under the <u>McDonnell Douglas</u> burden-shifting framework used in cases involving circumstantial evidence.   The <u>McDonnell Douglas</u> burden-shifting analysis requires Plaintiff to present evidence establishing a <u>prima facie</u> case.   93 S. Ct. at 1824.   Once a <u>prima facie</u> case is established, a presumption of discrimination arises, and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action at issue.   <u>Id.   See also Owens,</u> 33 F.4th At 825. If the defendant meets this burden of production, the presumption of discrimination created by the <u>prima facie</u> case disappears, and the plaintiff is required to present evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination.   This burden may be met by producing "sufficient evidence to create a genuine issue of material fact that either (1) [defendant's] reason[s] [are] a pretext or (2) that [defendant's reason[s], while true, [are] only one of the reasons for its conduct, and another 'motivating factor' is [plaintiff's] protected characteristic."   <u>Wallace,</u> 777 F. App'x at 87 & n. 6. <u>See also Quantum Chemical Corp. v. Toennies,</u> 47 S.W.3d 473, 479–80

(Tex. 2001) ("[T]he federal and state statutes provide that the employer commits an unlawful employment practice if discrimination 'was a motivating factor for an employment practice, even if other factors also motivated the practice.' Tex. Labor Code § 21.125(a); accord 42 U.S.C. § 2000e-2(m))."). In Reeves the Supreme Court explained that the McDonnell Douglas analysis does not require a plaintiff to produce evidence of both pretext and actual discriminatory intent to create a fact issue, and that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 120 S. Ct. at 2109.

### (b)   Application of the Law to the Undisputed Facts

#### (1)   Plaintiff Fails to Establish a Prima Facie Case

To establish a prima facie case of sex discrimination using the McDonnell Douglas framework, Plaintiff must cite evidence capable of establishing that: (1) she belongs to a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by or treated less favorably than a similarly situated employee outside of her protected group. Owens, 33 F.4th at 825. Defendant does not dispute that the first three elements of Plaintiff's prima facie case are established because as a female, Plaintiff belongs to a

protected group; Plaintiff was qualified for her position; and Plaintiff suffered an adverse employment action when she was discharged.[44] Asserting that "Regions filled [Plaintiff's] position with a female associate,"[45] Defendant argues that Plaintiff

> lacks any comparator evidence of a male associate who reported to Cofas and engaged in self-dealing but was retained. [Plaintiff] admits as much. In fact, the only male employee who engaged in conduct "nearly identical" to [Plaintiff's] conduct was [Davids-Guerrero], and Regions also terminated his employment. [Plaintiff] therefore cannot show a prima facie sex discrimination case, and this Court should dismiss her claims.[46]

Plaintiff has not cited evidence capable of establishing that she was replaced by someone outside of her protected group or that an employee outside of her protected group was treated more favorably under similar, _i.e._, nearly identical, circumstances. See _Turner v. Kansas City Southern Railway Co._, 675 F.3d 887, 893 (5th Cir. 2012) (quoting _Lee v. Kansas City Southern Railway Co._, 574 F.3d 253, 260 (5th Cir. 2009) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their

---

[44]Defendant's MSJ, Docket Entry No. 25, pp. 21-22 (disputing only Plaintiff's ability to satisfy the fourth element of a prima facie case).   See also Defendant's Reply, Docket Entry No. 31, p. 14 (asserting that Plaintiff has not established the fourth element of a prima facie case).

[45]Defendant's MSJ, Docket Entry No. 25, p. 22.

[46]Id.

-19-

employment status determined by the same person, and have essentially comparable violation histories.")). Instead, Plaintiff argues that "[b]ased on the evidence presented in this response, Plaintiff has met the burden of establishing a prima facie case by direct and circumstantial evidence."[47] Without citing any specific evidence, Plaintiff argues that Defendant "treated males more favorably because Ms. Cooper testified that if Plaintiff was a male, under identical circumstances, she would not have recommended Plaintiff be terminated."[48]

The undisputed evidence establishes that Defendant "filled the Conroe Branch Manager position held by [Plaintiff] with Amber Carlton, who is female."[49] Although Plaintiff contends Cooper testified that she would not have recommended that Plaintiff be discharged had she been a male,[50] Cooper actually testified that she would not have recommended that Plaintiff be discharged had she been a male friend — as opposed to the spouse — of Davids-Guerrero.[51] Moreover, Plaintiff has failed to identify any employee

---

[47]Plaintiff's Response, Docket Entry No. 28, p. 27.

[48]Id. at 28.

[49]Cofas Declaration, p. 4 ¶ 12, Exhibit D to Defendant's MSJ, Docket Entry No. 25-4, p. 5.

[50]Plaintiff's Response, Docket Entry No. 28, pp. 24 and 28.

[51]Cooper Deposition, p. 105:8-17, Exhibit B to Plaintiff's Response, Docket Entry No. 28-2, p. 106.

outside of her protected group who was treated more favorably under nearly identical circumstances.  Accordingly, Plaintiff has failed to establish a prima facie case of sex discrimination.  Even if Plaintiff's evidence is sufficient to establish a prima facie case of sex discrimination, for the reasons stated below, the court concludes that Plaintiff has failed to offer evidence sufficient to raise a genuine issue of material fact for trial.

### (2)   Defendant Cites a Legitimate, Non-Discriminatory Reason for Plaintiff's Discharge

Citing Cofas' Declaration, Defendant asserts that Plaintiff was discharged for violating Regions' policy against self-dealing.[52] Cofas testified in his declaration that from September 2015 through August 2022, he was a CBM and vice President of Regions' consumer banking group,[53] that his duties as CBM included overseeing branch managers in his assigned territory,[54] that he became Plaintiff's supervisor in November 2019, and that he supervised her through her termination.[55]   Cofas testified that in the process of assuming responsibility for the Conroe branch where Plaintiff worked, he learned that Regions' Office of Associate Conduct ("OAC") had been

---

[52]Defendant's MSJ, Docket Entry No. 25, p. 22.

[53]Cofas Declaration, Exhibit D to Defendant's MSJ, p. 1 ¶ 2, Docket Entry No. 25-4, p. 2.

[54]Id. ¶ 3.

[55]Id. at 2 ¶ 4, Docket Entry No. 28-4, p. 3.

conducting an internal investigation of Plaintiff and her husband, Davids-Guerrero, who was a Regions associate, and that the investigation had uncovered that Davids-Guerrero was a manager of a company, Autodynamica Motors, Inc., which had a bank account at Regions that both Plaintiff and her husband had serviced.[56] Cofas stated that when he spoke with Plaintiff about the Autodynamica account, she told him that she did not know whether her husband owned the business.[57] Cofas stated that he

> informed Cooper that both [Davids-Guerrero] and [Plaintiff] should be terminated because, based on the OAC's investigation and [Cofas'] own knowledge, including [Cofas'] conversation with [Plaintiff] and the spousal/marital relationship between [Davids-Guerrero] and [Plaintiff], they engaged in self-dealing and had broken the trust Regions places in its associates. One of the issues with [Plaintiff's] conduct was she should not have done the check fee refund — all she had to do was have someone else process the refund, and/or inform [Davids-Guerrero] that his manager needed to process the refund.[58]

Because violation of Defendant's policy against self-dealing constitutes a legitimate, non-discriminatory reason for terminating Plaintiff's employment, Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995), Cofas' testimony that Plaintiff violated Defendant's self-dealing policy satisfies Defendant's burden to offer evidence of a legitimate, non-discriminatory reason for Plaintiff's discharge.

---

[56] Id. ¶ 5.

[57] Id. ¶ 6.

[58] Id. at 2-3 ¶ 7, Docket Entry No. 28-4, pp. 3-4.

-22-

### (3) Plaintiff Fails to Cite Evidence Capable of Establishing Pretext or a Discriminatory Motive for Her Discharge

Because defendant has offered evidence of a legitimate, non-discriminatory reason for Plaintiff's discharge, Plaintiff must substantiate her claim of sex discrimination by offering evidence capable of proving that discriminatory animus lay at the heart of the decision to discharge her.  Owens, 33 F.4th at 825.  Plaintiff can carry her burden by offering substantial evidence capable of proving either that defendant's stated reasons for her discharge are a pretext for sex discrimination by showing that she was treated differently than similarly situated employees outside of her protected group, or that defendant's stated reason for her discharge is false or unworthy of credence and that sex discrimination was at least a motivating factor for her discharge.  Id. at 826.

Citing Goudeau v. National Oilwell Varco, L.P., 793 F.3d 470, 476 (5th Cir. 2015), Plaintiff argues that the strength of her prima facie case would allow a reasonable jury to conclude that sex discrimination was at least a motivating factor for her discharge,[59] because defendant's stated reason for her discharge is false or unworthy of credence.[60]  Plaintiff argues that

> the gravamen of [her] sex discrimination claim is that Defendant's reason for termination is unworthy of credence, false, and conflicting because Ms. Cooper's

---

[59]Plaintiff's Response, Docket Entry No. 28, p. 28.

[60]Id. at 29-31.

-23-

testimony proved that at the time she conducted the investigation into Plaintiff she did not have any evidence to reasonably believe that Plaintiff violated the self-dealing or conflict of interest policy; yet made the personal judgment, with a discriminatory intent, to terminate her based on her protected class.  Ms. Cooper failed to follow Regions progressive discipline policy and made the decision with a discriminatory animus. Moreover, Ms. Cooper had evidence that Mr. Davids[-Guerrero] knew he was listed as manager for Autodynamica and serviced the account; so he was terminated based on that evidence; yet Ms. Cooper terminated Plaintiff with no evidence, thus it is clear similarly situated male employees were treated more favorably.   Moreover, Ms. Cooper testified that if Plaintiff was a male she would not have been terminated under identical circumstances.  Defendant alleges it terminated Plaintiff for violating the self-dealing policy, even though the decisionmaker knew Plaintiff was unaware of Mr. Davids[-Guerrero]'s interest.[61]

In Goudeau the court quoted the Supreme Court's statement that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."   Id. (quoting Reeves, 120 S. Ct. at 2109).

Defendant has offered evidence that the decision to discharge Plaintiff was based on Cofas' conclusion that Plaintiff engaged in self-dealing in violation of Regions' Code of Business Conduct and Ethics.[62]   Plaintiff argues that Defendant's stated reason for her discharge is false and unworthy of credence because

---

[61]Plaintiff's Response, Docket Entry No. 28, p. 29.

[62]Cofas Declaration, pp. 2-3 ¶ 7, Docket Entry No. 25-4, pp. 3-4.

-24-

> [t]he record shows that Mike Cofas never had much
> influence in the termination decision; as he was not
> interviewed; and only recommended Plaintiff's termination
> after talking with Ms. Cooper. . . Therefore, it is clear
> from the record that Ms. Cooper had some influence or
> leverage in the decision to terminate Plaintiff."[63]

But to the contrary, the undisputed evidence shows not only that Cofas — not Cooper — made the decision to discharge Plaintiff, but also that Cofas told Cooper he believed Plaintiff and her husband should both be discharged when Cooper spoke with him on November 8, 2019, well before Cooper completed her investigation and recommended on November 22, 2019, that Plaintiff be discharged. Cooper's handwritten notes show that she spoke with Cofas about her investigation on November 8, 2019, and that Cofas told her then that he believed both Plaintiff and her husband should be discharged for self-dealing.[64]   Emails between Cooper and her supervisor, Smith, on November 21-22, 2019, show that Cooper did not decide to recommend that Plaintiff be discharged until November 22, 2019, and that before that date Cooper did not believe that Plaintiff should be discharged.[65]   Moreover, missing from Plaintiff's response to Defendant's MSJ is any evidence from which

---

[63]Plaintiff's Response, Docket Entry No. 28, p. 30.

[64]Nicole Cooper's Handwritten Notes, Exhibit F to Plaintiff's Response, Docket Entry No. 28-6, p. 2.

[65]See Nicole Cooper and Stephen Smith emails (11/21-11/22/19), Exhibit G to Plaintiff's Response, Docket Entry No. 28-7, p. 5 (November 22, 2019, email from Cooper to Smith at 9:34 AM stating, "I don't believe she should be fired."); and p. 3 (November 22, 2019, email from Cooper to Smith at 2:34 PM, stating "I submitted the request to you[] for termination for Julie Davids.").

reasonable jurors could conclude that either Cofas or Cooper did not reasonably believe that Plaintiff engaged in the conduct for which she was discharged. To the contrary, Plaintiff testified at her deposition that Cooper could have believed that she had a personal relationship with Autodynamica's owner.[66]

Nevertheless, without citing any specific evidence in the record Plaintiff argues that

> [e]vidence that Ms. Cooper did not reasonably believe Plaintiff violated the self-dealing policy demonstrates that the articulated reasons for Plaintiff's termination lack credence. . . Ms. Cooper testified that no evidence existed during the time of her investigation that would allow her to reasonably believe Plaintiff violated the self-dealing or conflict of interest policy. Such circumstances suggest Plaintiff did not actually violate the self-dealing or conflict of interest policy . . .[67]

This argument is based on Plaintiff's contention that she did not know that her husband had a personal interest in Autodynamica until Cooper questioned her about it in November of 2019,[68] and that Cooper recommended her for discharge because she is a woman and the wife of Davids-Guerrero,[69] who undisputedly had a personal affiliation with Autodynamica.[70]   But as Cooper testified at her

---

[66]See Davids 2022 Deposition, p. 154:5-15, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, p. 40.

[67]Plaintiff's Response, Docket Entry No. 28, p. 31.

[68]Id. at 12 (citing Davids 2022 Deposition, pp. 120:5-125:6, Exhibit A to Plaintiff's Response, Docket Entry No. 28-1, pp. 31-33).

[69]Id. at 23 (citing inter alia Cooper Deposition, p. 116:13-23, Exhibit B to Plaintiff's Response, Docket Entry No. 28-2, p. 117).

[70]Id. at 12 (citing Davids-Guerrero Deposition, pp. 77:23-80:8,
(continued...)

deposition, based on her investigation she believed that Plaintiff did have personal knowledge of an affiliation between her husband and Autodynamica, and she did not believe Plaintiff's statements to the contrary. In pertinent part Cooper testified:

> Q. And so if during your investigation, you know, she told you that she didn't have any knowledge how did you come to the conclusion that she was affiliated?
>
> MS. STAPLE: Objection. Asked and answered.
>
> Q. (BY MR. HODGES) How did you come to the conclusion that she violated the self-dealing policy?
>
> A. Because of the personal relationship that she described during the investigation.
>
> Q. But if she didn't know about the personal relationship how is that a violation?
>
> A. Again, based on the investigation that I conducted and the evidence that was gathered that was a judgment call that I made in regards to that investigation.
>
> Q. And so what I'm asking is what evidence was gathered to make that judgment call?
>
> A. The fact that Julie provided me information during the interview that Bernardo [her husband] was long-time friends with this customer and that she had been at an outing with the customer as well.
>
> . . .
>
> Q. Bernardo [her husband] had a personal interest in Autodynamica because he had his name on Autodynamica accounts, correct?
>
> A. Uh-huh. Yes.

---

[70](...continued)
Exhibit I to Plaintiff's Response, Docket Entry No. 28-9, pp. 78-81.

Q.   Julie Davids wasn't on Autodynamica accounts, correct?

                    .  .  .

A.   Yes.

Q.   And so I'm just trying to understand how did you reasonably believe that Julie Davids violated the self-dealing policy if you had no evidence that she was on the documents of Autodynamica and you had no evidence that she had personal knowledge of any affiliation between Bernardo and Autodynamica?

A.   Again, it's my belief based on the judgment call that I made that she was aware of the relationship and the affiliation and she refunded the fees on the account.

                    .  .  .

Q.   .  .  . And you would say that based on your interviews, only your interviews, is how you formed your belief that Julie Davids had a personal affiliation, correct?

A.   What I would say is it was based on their personal relationship, the fact that they are married and based on the interview, yes.[71]

                    .  .  .

Q.   Do you think that Julie Davids is a liar?

A.   I have no idea.

Q.   And so what made you believe that Julie Davids was not telling the truth?

A.   Based on my judgment.[72]

---

[71]Cooper Deposition, pp. 101:8-104:10, Exhibit B to Plaintiff's Response, Docket Entry No. 28-2, pp. 102-105.

[72]Id. at 118:20-24, Exhibit B to Plaintiff's Response, Docket Entry No. 28-2, p. 119.

Whether Cofas or Cooper wrongly believed that Plaintiff engaged in the conduct for which he was discharged is irrelevant, as even an employer's incorrect belief in the underlying facts – or an improper decision based on those facts — can constitute a legitimate, non-discriminatory reason for termination. See Owens, 33 F.4th at 826 (citing Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, 126 S. Ct. 1027 (2006) ("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a [discriminatory] motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones.")). See also Mayberry, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). Plaintiff cannot establish that Defendant's stated reason for her discharge is a pretext for discrimination merely by "reasserting [her] prima facie evidence," Mayberry, 55 F.3d at 1091, or by presenting her own testimony. See Amezquita v. Beneficial Texas, Inc., 264 F. App'x 379, 386 (5th Cir. 2008) (per curiam). Apart from Plaintiff's own testimony that Defendant's stated reasons for her discharge are false or unworthy of credence, the summary judgment record contains neither evidence rebutting Defendant's legitimate, non-discriminatory reason for her discharge, nor evidence from which reasonable jurors could conclude that the decision to discharge her

was a pretext for sex discrimination or was motivated by discriminatory animus for her sex. Accordingly, Plaintiff has failed to raise a genuine issue of material fact for trial on her Title VII and TCHRA claims of sex discrimination.

### 3.   Conclusions as to Sex Discrimination

Because Plaintiff has failed to offer either direct or circumstantial evidence from which reasonable jurors could conclude that she was discharged because of her sex, female, Defendant is entitled to summary judgment on Plaintiff's Title VII and TCHRA claims of sex discrimination.

### III.   **Conclusions and Order**

For the reasons explained above, the court concludes that plaintiff has failed to raise genuine issues of material fact for trial as to whether defendant discharged her because of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), and Chapter 21 of the Texas Labor Code. Accordingly, Defendant Regions Bank's Motion for Summary Judgment (Docket Entry No. 25), is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 29th day of March, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-30-